## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, as subrogee of Philip M. Field and Jennifer L. Welliver, | : : : : | CIVIL ACTION NO.: 1:21-cv-00278 |
| Plaintiff, | : : | |
| v. | : : | |
| KAT CONSTRUCTION LLC, | : : | |
| Defendant. | : : | |

## BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Respectfully submitted,

*/s/ Daniel J. Luccaro*
Daniel J. Luccaro, Esquire
Cozen O'Connor
1010 Kings Highway South
Cherry Hill, NJ 08034
Ph: (856) 910-5000
Email: DLuccaro@cozen.com
*Counsel for Plaintiff*

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION & SUMMARY OF ARGUMENT ......................................1

II.  LEGAL ARUGMENT.......................................................................5

  A.  The Court Should Not Consider the Reservation of Rights Letter In
     Deciding a 12(b)(6) Motion to Dismiss Because It is Outside the
     Pleadings ........................................................................................5

  B.  The Court Has Subject Matter Jurisdiction for This Case and Plaintiff
     has Pled a Viable Cause of Action Which is Ripe for Adjudication ...............8

  C.  There Has Been No Definitive Determination That Defendant has
     Limited Coverage ...........................................................................12

  D.  The Made-Whole Doctrine Governs Claims Between Its Insured and
     Its Insurer and Is Not Applicable to Plaintiff's Claims Against
     Defendant .....................................................................................16

III. CONCLUSION..............................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Bartholomew v. Fischl</u>,
  782 F.2d 1148 (3rd Cir.1986) ...........................................................................8, 9

<u>In Re Burlington Coat Factory Sec. Litig.</u>,
  114 F.3d 1410 (3d Cir. 1997) ...........................................................................6, 7

<u>Caldwell Trucking PRP Group v. Spaulding Composites Co.</u>,
  890 F. Supp. 1247 (D.N.J. 1995)..........................................................................15

<u>City of Asbury Park v. Star Insurance Co.</u>,
  242 N.J. 596, 233 A.3d 400 (2020) ......................................................16, 18, 19

<u>Cruz-Mendez v. ISU/Ins. Servs.</u>,
  156 N.J. 556, 722 A.2d 515 (1999) .......................................................................5

<u>Culver v. Insurance Co of North America</u>,
  115 N.J. 451, 559 A.2d 400 (1989) ..................................................16, 19, 20, 23

<u>Garden State Islamic Center v City of Vineland Nextel</u>,
  358 F.Supp.3d 377 (D.N.J. 2018)..........................................................................10

<u>Maertin v. Armstrong World Indus., Inc.</u>,
  241 F. Supp. 2d 434 (D.N.J. 2002)........................................................................15

<u>McShane v. N.J. Mfrs. Ins. Co.</u>,
  375 N.J. Super. 305 (App. Div. 2005)...................................................................23

<u>National Fire Insurance Company v. Universal Janitorial Supply Corp</u>,
  2006 WL 892291 (D.N.J. April 6, 2006) ..............................................11, 12, 13

<u>Nextel Communications of The Mid-Atlantic v. City of Margate</u>,
  305 F.3d 188 (3rd Cir. 2002) ........................................................................10, 11

<u>Peachlum v. City of York Pennsylvania</u>,
  33 F.3d 429 (3d Cir. 2003) ............................................................................10, 11

<u>Providence Washington Insurance Company v. Hogges</u>,
  67 N.J. Super 475, 171 A.2d 120 (1961).............................................................20

Reardon v. Allen,
   88 N.J. Super. 560 (Law. Div. 1965)...................................................................12

Rivera v. Alonso,
   1989 U.S. Dist. LEXIS 16564, 1989 WL 200989 (D.N.J. June 27,
   1989) ......................................................................................................................15

Rutgers Cas. Ins. Co. v. Vassas,
   139 N.J. 163 (1995) ..............................................................................................12

Texas v. United States,
   523 U.S. 296 (1998)...............................................................................................10

**Statutes**

28 USC §1332 ...............................................................................................................9

## I.   INTRODUCTION & SUMMARY OF ARGUMENT

This is a subrogation action arising out of a fire at a property owned by Plaintiff Scottsdale Insurance Company ("Plaintiff" or "Scottsdale")'s insureds, Philip M. Field and Jennifer L, Welliver (the "Insureds"), in Ocean City, New Jersey.  Plaintiff alleges that the fire was the result of Defendant, Kat Construction, LLC ("Defendant" or "Kat"), inadvertently turning on the stove while it was performing work at the property.  Plaintiff's Insureds have a separate litigation pending against Defendant in state court, which was filed after Plaintiff initiated the present action.[1]  Plaintiff and its Insureds are coordinating their efforts, sharing expert resources and have reached an agreement on sharing proceeds in the event there are limited funds available to satisfy their respective claims against Defendant.  See Exhibit A, Affidavit of John R. Slattery.[2]

Defendant has moved to dismiss Plaintiff's claims under Rule 12(b)(6) for lack of jurisdiction (the "Motion to Dismiss" or "Motion").  Defendant argues that Plaintiff's claims are not ripe for adjudication by this Court because Plaintiff's Insureds have not been made whole.  Defendant relies on a Reservation of Rights

---

[1] Plaintiff filed its original complaint on January 7, 2021. Plaintiff filed an amended complaint correcting the name of the Defendant on February 4, 2021 (the "Complaint").  Plaintiff's Insureds filed their state court action on September 27, 2021.  Plaintiff's Insureds are residents of New Jersey so did not have diversity jurisdiction to file their action in federal court.

[2] John R. Slattery represents the Insureds in their related state court action.

Letter from its liability insurance carrier as the sole the basis for the Motion. The document relied on by the Defendant is a collateral document which is not referenced in the Complaint, does not provide any basis for the claims asserted in the Complaint and is in no way integral to the Complaint. Therefore, it should not be considered by the Court for purposes of the present Motion to Dismiss under Rule 12(b)(6). Without the Court's consideration of this collateral document, the Defendant has no basis for the Motion to Dismiss.

Even if the Court considers the collateral document, Plaintiff asserts that its claims are ripe for adjudication and the Court has subject matter jurisdiction over this case. The Reservation of Rights letter that Defendant bases its Motion to Dismiss on is a January 5, 2022 letter from Golden State Claims Adjusters, the claims administrator for Defendant Kat's liability insurance carrier, Preferred Contractors Insurance Company Risk Retention Group, LLC ("PCIC"), which provides that a $25,000 sublimit under an Oil Based Paint and Flammable Products Limitation, rather than the $1 million per occurrence limitation in the policy, may apply to the claims asserted by Plaintiff (the "Reservation of Rights Letter"). Based on the Reservation of Rights Letter, Defendant asserts that Plaintiff's claims are not ripe for adjudication because its Insureds have not been made whole as the combined claims of Plaintiff and its Insureds are in excess of the $25,000 sublimit.

Plaintiff and its Insureds dispute that the sublimit in the liability policy is applicable to their claims and believe that there is $1 million in coverage under the PCIC policy to ultimately satisfy any judgments they may eventually obtain against Defendant.   There has been no definitive determination on the coverage issue.  The Reservation of Rights Letter says the sublimit may apply, it does not say that it does apply.  In addition, neither the Defendant nor its liability carrier have filed a declaratory judgment action on the coverage issue to properly bring the coverage issue before a court for determination.[3]  The Defendant's liability carrier is not a party to this litigation and the issue of the Defendant's liability insurance is not an issue to be decided by this Court.  Rather the issues to be decided by this Court relate to the Plaintiff's claims against the Defendant.

While the issue of Defendant's liability insurance coverage is not before this Court, it seems fairly obvious from its face that the $25,000 sublimit under the Oil Based Paint and Flammable Products Limitation does not apply as Plaintiff's claims are based on the Defendant inadvertently activing the stove and causing a fire and have nothing to do with the Defendant's use of oil based paint. In fact there is nothing in the Complaint which makes any reference to oil based paints.

---

[3] During the April 18 status conference with the Court, Defendant's counsel represented that PCIC is going to be filing a declaratory judgment action in the future.  However, even if such an action is filed, the filing of that action should not have any impact on the Court's analysis of whether Plaintiff's claims against Defendant are ripe for adjudication.

Even if the coverage sublimit is ultimately determined to be applicable, the amount of Defendant's insurance coverage is simply not relevant to the Court's determination of whether Plaintiff's claims against the Defendant are ripe for adjudication. The Defendant improperly suggests that New Jersey's made-whole doctrine is applicable to Plaintiff's claims against Defendant.  However, Defendant misstates the law, as the made-whole doctrine is applicable to disputes between a subrogating insurer and its insured when there is a fixed limited fund of money to resolve their combined claims and is not intended to be a defense to be raised by a third party tortfeasor against whom liability and damages still have to be established.  The made-whole doctrine would be relevant if this litigation involved a dispute between Plaintiff and its Insureds over the priority of recovering limited funds to satisfy their respective claims. However, that is not the dispute at issue in this litigation.  In fact, Plaintiff and its Insureds have reached an agreement on sharing any limited liability insurance proceeds, which should moot any argument based on the made-whole doctrine. Accordingly, Plaintiff asserts that the made-whole doctrine is not relevant to the claims at issue before the Court in this case.

It is important to note that as general matter a plaintiff's claims against a tortfeasor are not limited to the amount of the tortfeasor's liability insurance coverage. Rather an injured plaintiff is entitled to seek a judgment against a defendant tortfeasor for the full damages recoverable under the law.  Accordingly,

4

even if the Defendant only has $25,000 in liability insurance coverage, Plaintiff still has the right to attempt to obtain a judgment for the full amount of its claim against Defendant and then avail itself to the mechanisms available for collection as a creditor once it has obtained a judgment.

## II.    LEGAL ARUGMENT

### A.    The Court Should Not Consider the Reservation of Rights Letter In Deciding the 12(b)(6) Motion to Dismiss Because it is Outside the Pleadings

Defendant's Motion to Dismiss is based on the Court's consideration of the Reservation of Rights Letter, a collateral document that has nothing to do with Plaintiff's Complaint. As a starting point for this opposition, Plaintiff asserts that the Court should not consider this document for purposes of the Motion to Dismiss.  Without the Court's consideration of this extraneous document, there is no basis for Defendant's Motion and the Motion should be denied on that basis alone.

Defendant asserts that the Court should consider the Reservation of Rights Letter in deciding its Motion to Dismiss because it is integral to the Complaint. This argument misstates the law and is not supported by the facts of this case. Although, generally, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings, a document integral to the pleadings or explicitly relied upon in the complaint may be considered without converting a

motion to dismiss into a motion for summary judgment.  <u>In Re Burlington Coat</u>

<u>Factory Sec. Litig.</u>, 114 F.3d 1410, 1426  (3d Cir. 1997).   This is a very a narrow

exception to the general rule and should only be applied where the plaintiff's

claims asserted in the complaint are based on or rely on the extraneous document.

In this instance, the Reservation of Rights Letter is neither integral to the

Complaint nor explicitly relied upon in the Complaint.  In fact, the Reservation of

Rights Letter has nothing to do with the Complaint. Rather, it addresses the rights

between the Defendant and its liability insurer, PCIC.  PCIC is not a party to this

litigation and the issue of the Defendant's insurance coverage under the PCIC

policy is not before this Court.

Defendant incorrectly states that the Reservation of Rights Letter outlines

the amount of recovery available to Plaintiff and is therefore integral to Plaintiff's

Complaint. This statement simply is not true.  The Reservation of Rights Letter

does nothing more than identify potential limited coverage that may be available to

Defendant to satisfy Plaintiff's claims. However, the amount of Defendant's

available liability coverage is not dispositive of Plaintiff's rights against the

Defendant.  Even if the Defendant has limited liability insurance coverage under its

policy with PCIC, which Plaintiff adamantly disputes, Plaintiff's recovery against

Defendant is not limited to the amount of its liability insurance coverage and the

coverage is irrelevant to Plaintiff's right to pursue its underlying claims against the Defendant.

If a defendant's liability to an injured party was limited to the amount of its liability insurance coverage, then entities would be incentivized to carry only minimal insurance to limit their potential exposure to third parties.[4]

Defendant also argues that the Plaintiff was on notice of the Reservation of Rights Letter because it was turned over to Plaintiff's counsel on February 16, 2022.  This argument misstates the relevance of notice for purposes of determining if a collateral document should be considered for purposes of a motion to dismiss. In Burlington Coat Factory, the Third Circuit stated:

> The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint – lack of notice to plaintiff – is dissipated where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint. Id. at 1426

It is clear that the relevant notice identified by the Third Circuit is whether a plaintiff is on notice of the document at the time it files its complaint and relies on the document in framing its complaint. In this case, Plaintiff certainly did not rely on the Reservation of Rights when it drafted its Complaint.  Nor was it aware of it at the time of the Complaint. In fact, the Reservation of Rights Letter did not even

---

[4] It would be particularly problematic from a public policy perspective if contractors could limit their liability by only getting limited insurance coverage or obtaining coverage laden with sublimits not disclosed to the parties hiring them.

exist at the time Plaintiff filed the Complaint.[5]  In addition, notice to a plaintiff is not a factor that even should be considered by a xourt unless the collateral document is integral to or explicitly relied on by the plaintiff in drafting its complaint, which the Reservation of Rights Letter plainly was not in this instance.

Accordingly, the Court should not consider the Reservation of Rights Letter in deciding the Motion to Dismiss.  As the Defendant's entire argument in favor of dismissal for lack of ripeness is based on the allegations in the Reservation of Rights Letter, if the Court does not consider the letter, then it must deny the Motion.

### B. The Court Has Subject Matter Jurisdiction for This Case and Plaintiff has Pled a Viable Cause of Action Which is Ripe for Adjudication

Even if the Court does consider the Reservation of Rights Letter in deciding this Motion, the Motion should still be denied because Plaintiff's claims are ripe for adjudication.   A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.

---

[5] Plaintiff filed the Complaint on February 24, 2021. Defendant filed its answer on July 23, 2021.  The Reservation of Rights Letter was dated January 5, 2022 and was first produced to Plaintiff on February 16, 2022. The fact that the Reservation of Rights Letter was issued by PCIC to its insured more than a month before it was even provided to Plaintiff or its Insureds further underscores that the Reservation of Rights Letter has nothing to do with Plaintiff's Complaint and is not dispositive of Plaintiff's claims against Defendant.

Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3rd Cir.1986).  There is no dispute that diversity jurisdiction exists in this matter under 28 USC §1332.  Plaintiff Scottsdale is an Ohio Corporation with a principal place of business in Arizona and Defendant is a New Jersey company. Accordingly, there is complete diversity of citizenship between the parties and the damages alleged by Plaintiff are in excess of $75,000.

Plaintiff asserts that on December 19, 2019, Defendant inadvertently activated a stove at the property and left it operational, thereby causing a fire. Plaintiff has asserted a valid cause of action for negligence and set forth factual allegations in the Complaint to support its claim.  For purposes of the Motion to Dismiss, the Court must accept all of the Plaintiff's allegation in the Complaint as true.

Defendant does not dispute that there is diversity jurisdiction.  Nor does the Defendant dispute that Plaintiff has properly pled facts to establish a negligence claim against Defendant. Rather Defendant asserts that Plaintiff's claims are not ripe for adjudication based on the made-whole doctrine.  As set forth below, Plaintiff asserts that the made-whole doctrine is not applicable to the facts of this case for a variety of reasons.  However, even if the made-whole doctrine would be applicable to a hypothetical future dispute between Plaintiff and its Insureds over

limited insurance proceeds, the made-whole doctrine is not relevant to the ripeness of Plaintiff's claims against Defendant asserted in this litigation

The ripeness of Plaintiff's claims against Defendant has nothing to do with whether or not there is sufficient insurance coverage to cover those claims.  In determining whether a claim is ripe for consideration, a court should consider whether the parties' conflicting contentions present real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract. Garden State Islamic Center v City of Vineland Nextel, 358 F.Supp.3d 377 (D.N.J. 2018).  The function of the ripeness doctrine is to determine whether a party has brought an action prematurely.  Peachlum v. City of York Pennsylvania, 33 F.3d 429, 433 (3d Cir. 2003). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998). A claim may not be ripe for adjudication when the harm has not yet occurred and is hypothetical or abstract.  In this case, the harm has already occurred and Plaintiff's claims against Defendant are not conditional on a future event occurring.

The cases cited by Defendant in support of its argument that Plaintiff's claims are not ripe are clearly distinguishable from the facts of this case. See Garden State Islamic Center, 358 F.Supp.3d 377 (holding claim for civil rights

violation was ripe for adjudication); Nextel Communications of The Mid-Atlantic v. City of Margate, 305 F.3d 188 (3rd Cir. 2002)(holding claim for injunction was not ripe); Peachlum, 33 F.3d 429 (holding first amendment challenge to sign on lawn was not ripe).  Cases dismissed for lack of ripeness typically involve claims for injunctions or constitutional challenges for harms that have not yet occurred.  The issue of ripeness would not appear relevant for negligence claims for property damage that has already occurred.  Defendant has not cited any cases with facts similar to the present case where a subrogating insurance carrier's otherwise viable claims against a tortfeasor were dismissed as not being ripe because the carrier's insured had not yet been made whole.[6]

In this instance, there has been actual damages sustained by Plaintiff.  Plaintiff's Insureds suffered damage to their property from a fire alleged to have been caused by Defendant's negligence.  Plaintiff has made payments to its Insureds for damages from the fire under its insurance policy.   By virtue of those payments, plaintiff stands in the shoes of its Insureds with respect to any claims against the Defendant to the extent of its payments.

In National Fire Insurance Company v. Universal Janitorial Supply Corp., this Court recognized that both a subrogating insurer and its insured have a right to

---

[6] As discussed in greater detail in section II(D) below, the made-whole doctrine is only applicable to disputes between an insurer and its insured and is not a defense that can be raised by a defendant tortfeasor to attempt to limit claims against itself.

pursue claims for their damages against a third party and can maintain separate actions in state and federal court.  2006 U.S. Dist. LEXIS 17211;  2006 WL 892291 (D.N.J. April 6, 2006).  In cases of partial subrogation both parties have substantive rights and either party may sue in their own name. 2006 U.S. Dist. LEXIS 17211 at *6.  A subrogating carrier is free to pursue its subrogation claim separate from any claim belonging to its insured. Reardon v. Allen, 88 N.J. Super. 560, 564 (Law. Div. 1965).  A cause of action for subrogor and subrogee accrue at the same time. Rutgers Cas. Ins. Co. v. Vassas, 139 N.J. 163, 170 (1995).

Accordingly, Plaintiff's claims are ripe for adjudication in this case even if there are limited insurance proceeds available to the Defendant to satisfy any eventual judgements against the Defendant by Plaintiff and its Insureds.

## C.   There Has Been No Definitive Determination That Defendant has Limited Coverage

While Plaintiff asserts that the Defendant's liability coverage is not relevant for purposes of determining the ripeness of Plaintiff's claims, it is important to note that there still has not even been any actual definitive determination that there is limited coverage. Defendant asserts that there is only $25,000 in liability coverage available based on sublimit in an Oil Based Paint and Flammable Products Limitation in its insurance policy with PCIC.   Both Plaintiff and its Insureds dispute that the limitation applies as their claims are based on the Defendant leaving the stove on and the claims have nothing to do with Defendant's

use of oil based paints.  In fact, Plaintiff's Complaint does not mention anything about oil based paints.[7]

Plaintiff and its Insureds both dispute that the sublimit in the liability policy is in any way applicable to their claims and believe that there should be $1 million in coverage under the PCIC policy to ultimately satisfy any judgments they may eventually obtain against Defendant.   The Reservation of Rights letter is conditional and states that the coverage limitation may apply.  In addition, neither the Defendant nor its carrier have filed a declaratory judgment action to properly bring the coverage issue before a court for determination.[8]

Defendant relies entirely on the Reservation of Rights Letter in support of its argument for dismissal.  However, in its Motion, the Defendant misrepresents what the Reservation of Rights Letter actually states.   The Reservation of Rights letter states:

> to the extent that the alleged fire was in any way related, in whole or in part, to the handling of, storage, use of or disposal of oil based paint, lacquers or other flammable liquids or solids or related items, whether oil based or non-oil based, the $25,000, submit set forth in the Oil Based Paint and

---

[7] In addition, Plaintiff has already provided Defendant with a copy of the report from its fire expert, which specifically rules out spontaneous combustion of oil based paints as a cause of the fire.  Plaintiff is not attaching that report as the Motion to Dismiss is based solely on the pleadings.  However, Plaintiff can provide that to the Court for its review if the Court believes it would be relevant.

[8] Even if such an action is filed, the filing of that action should not have any impact on the Court's analysis of whether Plaintiff's claims against Defendant are ripe for adjudication.

Flammable Products Limitation Endorsement in the PCIC Policy applies to the claims in this action.

The language in the Reservation of Rights Letter is conditional and the letter does not affirmatively state that the coverage sublimit applies. Rather, it is clear that the Reservation of Rights letter indicates the limitation may apply under certain circumstances. However, in its Motion, Defendant affirmatively represents that "PCIC provided a Reservation of Rights letter indicating that a sublimit in the policy applied"[9] and "as this case involved a fire at the insured's property, which is alleged to have resulted from work performed by Defendant Kat Construction, the sublimit in the PCIC policy applies."[10] Accordingly, the representations by Defendant in its Motion with regard to the coverage limitation go beyond what is actually stated in the Reservation of Rights Letter.

It seems fairly obvious from the wording of the sublimit that it has nothing whatsoever to do with Plaintiff's claims alleged against the Defendant in the Complaint, however, Plaintiff is not addressing the application of the coverage in detail in this brief as the issue of the Defendant's liability coverage is not an issue before this Court and not relevant to the issue of the ripeness of Plaintiff's claims. The issue of the application of this limitation can only be determined through a declaratory judgment action. However, neither Defendant nor its liability carrier

---

[9] See defendant's brief at pg 4.
[10] See defendant's brief at pg 6.

14

have filed a declaratory judgment action to get a judicial determination of whether the limitation applies.   Rather, the Defendant seeks to have Plaintiff's complaint dismissed entirely on an unfounded coverage position which neither Defendant nor its liability carrier have taken the steps to have properly brought before a court on a declaratory judgment action.

Plaintiff and its Insureds have no standing to bring a declaratory action without first obtaining a judgment against the Defendant and establishing their damages.[11]   Accordingly, amongst the many other reasons the case should not be dismissed, Plaintiff should be permitted to continue this litigation to obtain a judgment so it can challenge this unsupported coverage position if the Defendant's liability carrier continues to maintain it.   However, even if there is limited coverage, the potential limited liability coverage of the Defendant is not a limit to

---

[11] It is well settled under New Jersey law, that a plaintiff must get a judgment against a defendant before it can bring a direct action against its liability carrier. See Caldwell Trucking PRP Group v. Spaulding Composites Co., 890 F. Supp. 1247, (D.N.J. 1995)("As a general rule, the common law prohibits actions by a third party against an insurer absent some statutory or contractual provision permitting direct action."); Maertin v. Armstrong World Indus., Inc., 241 F. Supp. 2d 434, 451 (D.N.J. 2002) (holding that New Jersey courts require a plaintiff to obtain a judgment against the insured, execute that judgment, and receive the judgment back unsatisfied because of insolvency or bankruptcy before it can commence a direct action against the insurer); Rivera v. Alonso, 1989 U.S. Dist. LEXIS 16564, 1989 WL 200989 (D.N.J. June 27, 1989) (holding that "an injured party generally possesses no direct cause of action against the insurer of the tortfeasor prior to recovery of judgment."); Cruz-Mendez v. ISU/Ins. Servs., 156 N.J. 556, 566-67, 722 A.2d 515 (1999)(holding plaintiffs in tort actions generally may not directly sue insurers).

Plaintiff's right to pursue its claims against the Defendant and therefore is not something that should be considered by the Court in determining if Plaintiff's claims are ripe for adjudication.

### D.   The Made-Whole Doctrine Governs Claims Between An Insured and Its Insurer and Is Not Applicable to Plaintiff's Claims Against Defendant

The New Jersey Supreme Court has recognized the made-whole doctrine in situations where an amount recoverable from a responsible third party is insufficient to satisfy the total loss of an insured and its subrogating insurer. City of Asbury Park v. Star Insurance Co., 242 N.J. 596, 605, 233 A.3d 400, 405 (2020). "Under such circumstances, the made-whole doctrine holds that the injured party should be the first to tap into the limited pool of funds and recover on any loss, and when someone cannot be fully paid, the loss should be borne by the subrogee, the insurer." Id. (internal citation omitted). The New Jersey Supreme Court has also recognized that a subrogating insurer and its insured may agree to work out a separate arrangement between them which alters the made-whole doctrine. Culver v. Insurance Co of North America, 115 N.J. 451, 457-458, 559 A.2d 400, 403-404 (1989).

In this instance, while Plaintiff and its Insureds both adamantly contest that there are limited proceeds available to satisfy their combined claims against the Defendant, they have reached an agreement with regard to sharing any limited

insurance proceeds.[12]  By virtue of that agreement, Plaintiff's Insureds have

waived any right to be made-whole before Plaintiff can recover from the

Defendant.  This agreement is confirmed in the attached Affidavit from the

Insureds' counsel, John R. Slattery. See Exhibit A, Affidavit of John R. Slattery.[13]

The Affidavit provides as follows:

- The Insureds and Scottsdale have entered into a Cooperation Agreement, which provides for the sharing of resources and an agreed split between Scottsdale and the Insureds if there are limited liability insurance proceeds to resolve their claims. By operation of the aforementioned agreement, the Insureds have waived any rights to be made whole under New Jersey law before Scottsdale has a right to recover against Kat Construction.

- The Insureds agree with Scottsdale's positon that the $25,000 sublimit in Kat Construction's policy is not applicable to their claims.

- To the extent there is limited coverage under the PCIC policy, the Insureds and Scottsdale have reached an agreement on sharing those limited proceeds.

- The Insureds do not have any objection to Scottsdale proceeding with the current litigation even if there are limited proceeds available under Kat Construction's liability policy with PCIC.

---

[12] The combined claims of Plaintiff and its Insured against the Defendant are $815,242.78 and Plaintiff and its Insureds believe there should be $1 million in coverage available under the Defendant's liability policy to satisfy their claims.
[13] If the Court determines it is appropriate to consider the Reservation of Rights Letter for purposes of deciding this Motion, then equitably it should also consider collateral documents provided by Plaintiff to support its Complaint including the Affidavit of its Insureds' counsel.

Based on the agreement between Plaintiff and its Insureds, which is outlined in the Insureds' counsel's Affidavit, the Defendant's made-whole argument is entirely mooted and the Motion should be denied.

While Plaintiff asserts that the agreement with its Insureds on the sharing of limited insurance proceeds moots any argument based on the made-whole doctrine, even in the absence of such an agreement, the made-whole document is not relevant in determining whether Plaintiff's claims against Defendant are ripe for adjudication. The made-whole rule applies when there is dispute between an insured and its subrogating insurer over the priority of recovering limited funds and the doctrine's equitable basis is in protecting the rights of an insured.  It is not intended to benefit a tortfeasor and not a defense that can be raised by a tortfeasor to limit its potential liability to injured plaintiffs that have sustained damages from a tortfeasor's negligence.  The New Jersey courts have not applied the made-whole doctrine as a basis to dismiss a subrogating carrier's claims against a responsible tortfeasor.

The New Jersey courts assessing the made-whole rule have only applied it in situations where there was a dispute between the insured and its subrogating insurer over limited funds and where the claimants' rights to the funds had already been established by agreement or judgment and their potential claims against the tortfeasor extinguished.  City of Asbury Park involved a dispute on the priority of

18

recovery between a worker's compensation insurer and its employer-insured over an agreed lien from a personal injury settlement by the insured's injured worker against a third party tortfeasor. 242 N.J. 596, 233 A.3d 400. In that case, as a condition of the settlement between the injured worker and the tortfeasor, both the employer-insured and its insurer agreed that a certain amount of the injured worker's settlement would be set aside to satisfy their combined subrogation lien. By virtue of that agreement, the insured and insurer had no future rights to pursue claims against the torfeasor and the pool of money available to satisfy their respective claims was fixed by their agreement.  The made-whole doctrine only came into play once there was a dispute between the insured and insurer over the distribution of the agreed fixed pool of money that had been set aside to satisfy their combined claims.

Similarly,  Culver involved a dispute between an insured and its insurance carrier over the distribution of funds from a settlement that they had previously mutually agreed to accept from a third party tortfeasor. 115 N.J. 451, 559 A.2d 400.  As was the case in City of Asbury Park, the underlying settlement with the tortfeasor resolved any claims by the insured and insurer against the tortfeasor and fixed the amount they could recover from the tortfeasor.  The dispute and potential application of the made-whole doctrine arose only after the parties had agreed to accept a fixed sum from the tortfeasor to settle the case and the insured

subsequently sought to alter the agreement with its subrogating insurer over their respective rights to the funds from the agreed settlement.

The other case cited by defendant in its brief and which is generally cited as the New Jersey courts as introducing the made-whole doctrine in New Jersey is Providence Washington Insurance Company v. Hogges, 67 N.J. Super 475, 171 A.2d 120 (1961). The facts of that case were unique and really did not even involve a first money issue. An auto insurance carrier sued its injured insured who have previously filed suit against a third party tortfeasor including a claim for both personal injuries and property damage and got an adverse judgment in favor the tortfeasor. The insurer made no effort to file its own subrogation action and then sought recovery from its insured for the money it could have hypothetically tried to recover from the third party tortfeasor in a subrogation action. While there was no agreed sum of money to be distributed as there was in City of Asbury Park or Culver, there was a judgment in favor of the tortfeasor, which extinguished the rights of both the insured and insurer against the tortfeasor. Accordingly, the rights of both insurer and insured against the tortfeasor were fixed.

The aforementioned made-whole cases all involved disputes between an insurer and its insured over an agreed limited amount of funds. In order for the made-whole doctrine to become relevant, there are several things that first have to happen: (1) the insured and insurer's rights to recover against a tortfeasor must be

established by either a settlement or judgment; (2) the insured and insurer must establish their recoverable damages through a settlement or judgment; and (3) there must be a fixed amount of funds available to satisfy the insured and insurer's combined claims and a dispute between them over those funds. None of those factors are present in this case.  First, neither Plaintiff nor its Insureds have established their right to a judgment against Defendant.  Defendant continues to contest its liability for causing the fire.  Second, neither Plaintiff nor its Insureds have established their respective recoverable damages. Defendant is also contesting the parties' damages.  Third, it has not been established that there are limited funds to satisfy their respective claims and there is no agreement by Plaintiff or its Insureds to accept any type of limited funds to satisfy their respective claims against the Defendant.

The present case is clearly distinguishable from the facts of City of Asbury Park, Culver, and Hogges in that this matter involves a claim by a subrogating insurance carrier against a third party tortfeasor and not a dispute with its insured. Nor has it been established through a judgment or agreement that there is a limited pool of funds to be distributed between them.  The made-whole rule would apply only if there was a dispute between Plaintiff and its Insureds on the distribution of limited available insurance proceeds from which they could recover once they have established their damages. In order for the made-whole doctrine to come into play,

both Plaintiff and its Insureds would have to establish through a judgment or settlement their right to recover against the Defendant and their respective recoverable damages. There would then have to be some type of definitive determination that the Defendant had limited coverage. If it was established that there was limited coverage, in the absence of an agreement, the made-whole doctrine would determine the priorities of Plaintiff and its Insureds with respect to recovering that limited coverage under the PCIC policy. However, it would still not have an impact on the parties' substantive rights against Defendant and their rights to recover from the Defendant directly or through other sources. Unless Plaintiff and its Insureds both agreed to settle with the Defendant for limited available liability insurance proceeds, their rights to recover against the Defendant are not limited to the available insurance proceeds under the PCIC insurance policy. Of course, the foregoing hypothetical scenario will never occur as there is an agreement in place between Plaintiff and its Insureds to share any limited insurance proceeds.

The made-whole doctrine is relevant to disputes between an insurer and its insured. It is not intended to be a defense to a third party tortfeasor with limited insurance coverage against claims by either a subrogating insurer or insured. Accordingly, the Defendant has no standing to raise the made-whole doctrine as a defense in this matter. None of the cases cited by Defendant provide that a

subrogating carrier's claims against a tortfeasor should be dismissed just because the tortfeasor may have limited coverage.  In addition, this Court has recognized that a subrogating insurer and its insured can pursue parallel actions against a defendant even where the insured has not been made whole. See National Fire Insurance Company v. Universal Janitorial Supply Corp., 2006 U.S. Dist. LEXIS 17211;  2006 WL 892291 (D.N.J. April 6, 2006).

An injured plaintiff's claims against a tortfeasor are not limited to the amount of insurance the tortfeasor has.  Rather, an injured plaintiff has a right to get a full judgment against tortfeasor even if the judgment is beyond the limits of a tortfeasor's liability insurance coverage.  The New Jersey Supreme Court has recognized that subrogation "is highly favored in the law." Culver, 115 N.J. at 456. "It has long been appreciated that '[s]ubrogation is a device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it." Id. (quotations omitted).  It "fulfills the dual purposes of avoiding unjust enrichment to an insured who obtains recovery for the same injury from both his insurer and the tortfeasor and, in the absence of such double recovery, of precluding the tortfeasor from escaping liability for damages that the tortfeasor has caused." McShane v. N.J. Mfrs. Ins. Co., 375 N.J. Super. 305, 309-310 (App. Div. 2005).  The New Jersey courts have recognized that the purpose of subrogation is to preclude a tortfeasor from escaping liability for damages it has caused.  If the

Court were to dismiss Plaintiff's claims simply because the Defendant may have limited insurance coverage to satisfy a judgment, it would thwart the entire purpose of subrogation, and would unjustly benefit the Defendant for having limited insurance.

According, even if the Defendant has limited insurance coverage and the made-whole doctrine could theoretically apply to a future dispute between Plaintiff and its Insureds over the rights to recovery of limited insurance proceeds, that should not preclude Plaintiff from pursuing a claim against the Defendant. The Plaintiff should be permitted to proceed with this action so it can obtain a judgment against Defendant and then attempt to collect on that judgment through whatever mechanisms are available as a judgment creditor once it has obtained a judgment.[14]

## III.   CONCLUSION

The Court has subject matter jurisdiction over Plaintiff's claims against Defendant and Plaintiff's claims are ripe for adjudication. Accordingly, the Court should deny Defendant's Motion to Dismiss.

---

[14] Once Plaintiff has obtained a judgment against the Defendant, there are numerous options available for Plaintiff to explore to try to satisfy its judgment other than liability insurance proceeds available under the PCIC policy including attaching Defendant's current or future assets or an assignment of Defendant's potential contractual and/or bad faith claims against its carrier or insurance agent. However, none of these options become available to Plaintiff until it has a judgment against the Defendant.